UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT LEE HOOD,<br><br>    Plaintiff,<br><br>v.<br><br>CHUNA, et al.,<br><br>    Defendants. | Case No.: 1:13-cv-00108-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 48)<br><br>**FOURTEEN (14) DAY DEADLINE** |

## I. Introduction

Plaintiff Albert Lee Hood is proceeding pro se and in forma pauperis in this civil rights action. This case currently proceeds on Plaintiff's claim against Defendant Adleno Cunha, Jr., for deliberate indifference to his serious medical needs.[1]

Currently before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, on the grounds that Plaintiff cannot show that Defendant was deliberately indifferent to any serious medical need based on the undisputed evidence. Plaintiff opposed the motion on February 27, 2017, (ECF No. 53), and filed an affidavit in support, (ECF No. 54). Defendants filed a reply (ECF No. 56), and a response to Plaintiff's opposition to his undisputed statement of facts, (ECF No. 57), on March 2, 2017. The motion is deemed submitted. Local Rule 230(l).

---

[1] Defendant Cunha was erroneously sued as "Chuna."

1

## II. Legal Standards

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The exact nature of this responsibility varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Id. (citing Celotex, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id.; see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III. Discussion**

   **A. Summary of Relevant First Amended Complaint Allegations**[2]

Plaintiff alleges that on December 4, 2011, he was incarcerated at the Fresno County Jail. When asked by the nursing staff if he had any injuries, Plaintiff responded that he "had a bullet that was moving around and that it was hurting." (First Am. Compl. at p. 4 ¶¶ 6-8.)

On September 3, 2012, the bullet worked its way out of Plaintiff's stomach, and he contacted Officer Cunha by using the intercom button. Plaintiff alleges that over the intercom, he "informed Officer [Cunha] that the bullet had come out of his stomach and that he needed to go to medical because he was bleeding and had the bullet in his hand." Officer Cunha told Plaintiff to "stay off" the button because he was busy. Plaintiff again pushed the button and asked Officer Cunha if he heard what Plaintiff told him. Officer Cunha again told Plaintiff to stay off the button. (Id. at p. 4 ¶¶ 10-14.)

---

[2] Plaintiff's first amended complaint (ECF No. 32, at p. 8) is verified, and therefore constitutes an opposing affidavit for purposes of ruling on a motion for summary judgment. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

3

1    Plaintiff alleges that approximately two and a half hours later, he went to the front of the pod
2    and banged on the window to get Officer Cunha's attention. Plaintiff showed Officer Cunha that he
3    was bleeding. Officer Cunha told Plaintiff, who was standing inside of a red line, to "get out of the
4    red." Plaintiff continued to show his wound to Officer Cuna, who then used the loudspeaker to tell
5    Plaintiff to get on the other side of the red line. (Id. at p. 5 ¶¶ 16-18.)

On September 4, 2012, Plaintiff contacted his criminal defense attorney and informed him that he still had not been seen by medical for his injury. (Id. at p. 5 ¶ 21.) Plaintiff's attorney sent over an investigator, who took a look at Plaintiff's wound and the bullet. On the same day, Officer Wibbles and Officer Zavala came to Plaintiff's cell. They searched the cell, found the bullet, and escorted Plaintiff to Sergeant Taylor. Sergeant Taylor was accompanied by federal law enforcement agents and the investigator who had been sent by Plaintiff's attorney. Plaintiff alleges that the federal agents asked that Plaintiff have his handcuffs removed and that Plaintiff be taken to medical. Plaintiff alleges that this was the first time that he was seen for his injuries. (Id. at p. 7 ¶ 34.)

### B.    Undisputed Material Facts[3]

#### 1.    Fresno County Jail

At all times relevant to this lawsuit, Plaintiff was housed in Pod C, and assigned cell 4, on the fourth floor of the Fresno County main jail. (Cunha Decl., ECF No. 48-4, ¶ 3.) Pod C is a general population pod in which inmates are allowed to roam around freely, except during head count checks. (Id. at ¶ 4.) A head count check is conducted every evening at 10:00 a.m. During that check, the inmates are locked in their individual cells until the check is completed, and floor correctional officers ("COs") go from one cell to the next, making visual contact with each inmate to confirm that all inmates are present and accounted for. (Id.)

Pursuant to the County Jail policy, visual inspection of the individual sleeping areas in general population housing is to be conducted by floor COs at least once every two hours. (Id. at ¶ 6.) During this inspection, the COs inspect the sleeping areas and walk around inside the pod and check on the

---

[3] See Defendants' Separate Statement of Undisputed Material Fact in Support of Motion for Summary Judgment, (ECF No. 48-2), Plaintiff's First Amended Complaint, and Plaintiff's Affidavit for Opposition and Response to Defendant's Summary Judgment Rule 56(c) Motion, (ECF No. 54).

4

general welfare of the inmates. (Id.) All security checks, including the visual security checks, the head counts, as well as meal passes, toilet paper passes, and medication passes, are documented and recorded on the jail computer utilizing the Safety Check System. (Id. at ¶ 7.)

On each floor of the jail, there is a security station. The security station is enclosed with large solid glass windows and is located in the center of the floor, surrounded on three sides by housing pods. A sally-port around the security station provides additional separation from the pods. (Id. at ¶ 10.)

While on duty in the security station, a CO must remain in the station and monitor all movement in the surrounding pods. (Id. at ¶ 11.) The CO in the security station is able to communicate with the inmates via intercom or by way of hand signals. (Id.) When working at the jail as a floor officer, a CO's duties include distributing the meals to the inmates, picking up the meal trays upon completion of the meal, processing inmate request slips, conducting safety checks and head counts, and generally walking the floor to which that CO is assigned and making sure that the inmates are safe and secure. (Id. at ¶ 5.)

Medical staff employed by Corizon Health is tasked with the duties of providing medical care and treatment of the inmates at the Fresno County Jail. (Id. at ¶ 8.) If an inmate has a medical complaint and wants to be seen by medical personnel, that individual can complete an inmate request form which is then given to medical staff. (Id. at ¶ 9.) The medical staff review and respond to the request as determined to be medically appropriate. (Id.)

### 2. Events at Issue

At all times relevant, Defendant was employed as a CO in the Fresno County main jail. (Cunha Decl. ¶ 2.) Plaintiff was brought to the Fresno County main jail on December 4, 2011, at which time he had a bullet in his body. (First Am. Compl. at p. 4 ¶¶ 6-8; Pl.'s Aff. at p. 4 ¶ 19.) Plaintiff contends that he then informed medical staff that he had a bullet in his body, which was moving around and causing him pain. (Id.) He further contends that he was advised to fill out a medial form to be seen. (First Am. Compl. at p. 4 ¶ 9.) Plaintiff asserts that he had signed up for sick call at various times, but had not received care. (Pl.'s Aff. at pp. 4-5 ¶¶ 22, 27.)

///

5

Some months later, on the evening of September 1, 2012, Defendant arrived to work a graveyard shift at the Fresno County main jail. (Id. at ¶ 10.) That graveyard shift ended during the early morning hours of September 2, 2012. During that shift, Defendant worked in the security station on the fourth floor of the jail. (Id.)

The parties agree that while Defendant was on duty that evening, Plaintiff called the security station over the intercom in his cell and indicated that the bullet that had been lodged in his stomach had come out. (First Am. Compl. at p. 4 ¶¶ 10-11; Pl.'s Aff., ECF No. 54, at p. 3 ¶ 7; Cunha Decl. ¶ 12.) The parties also agree that the jail was on lockdown at that time. (First Am. Compl. at p. 5 ¶ 15; Pl.'s Aff. at p. 3 ¶ 7; Cunha Decl. ¶ 13.)[4]

According to Defendant, from where he was located in the security station, he could see that the floor officers were in the pods conducting security checks and that Plaintiff's cell was the next to be checked. (Cunha Decl. ¶ 13.) Defendant asserts that since Plaintiff's cell was about to be checked and Defendant could not leave his post, he told Plaintiff to tell the floor officer checking his cell about his complaint. (Id.) Defendant next asserts that as he continued to monitor the situation visibly and via the intercom, it appeared that Plaintiff did not advise the floor officer of his physical situation or that he required medical attention. (Id. at ¶ 14.) As a result, Defendant concluded that Plaintiff did not need to be seen by medical staff. (Id.)

Plaintiff disputes Defendant's assertions, and declares that there was no staff readily available, that he never saw any housing unit staff come by his cell, and that he was never told by Defendant to talk to the housing unit staff. (Pl.'s Aff. at p. 3 ¶¶ 10, 12.) Instead, Plaintiff contends that he told Defendant that he was bleeding and the bullet had come out and was in his hand, and he needed to go to medical. (First Am. Compl. at p. 4 ¶ 11.) Defendant replied to Plaintiff that he needed "to stay off the [intercom] button because he was busy." (Id. at p. 4 ¶ 12.) Plaintiff asserts that he pushed the button again and asked Defendant if he heard what Plaintiff said about the bullet coming out of his stomach, but Defendant said again to "stay off the damn button." (Id. at pp. 4-5 ¶¶ 13-14.)

---

[4] The dates of the events at issue are somewhat inconsistent in the First Amended Complaint. (Compare First Am. Compl. at p. 5 ¶ 19, stating that bullet came out four days after September 4, 2012, with p. 4 ¶10, stating that bullet came out on September 3, 2012.) In Plaintiff's most recent affidavit submitted in support of his opposition, he agrees with Defendant's dates. (ECF No. 54, pp. 3-6.)

6

The parties agree that some hours later, Plaintiff came to the window of Defendant's pod to complain again about the bullet that had come out of the wound in his stomach. (First Am. Compl. at p. 5 ¶ 16; Cunha Decl. ¶ 15.) Defendant declares that he again advised Plaintiff to tell the floor officers, who were present and readily available to the inmates, about his physical situation. (Cunha Decl. ¶ 15.) Defendant declares that he continued to observe and again noted that Plaintiff did not advise the floor officer of his condition or complaints. (Id.)

Plaintiff disputes this version of events, instead contending that he banged on the window to get Defendant's attention, and to try to show Defendant his bloody shirt and the dislodged bullet. (First Am. Compl. at p. 5 ¶ 16.) Plaintiff contends that Defendant first motioned for Plaintiff to get behind the red line that Plaintiff had crossed to bang on the window, and when Plaintiff instead showed or attempted to show Defendant that he was bleeding, Defendant got on the loudspeaker and ordered him to get out of the red. (Id. at ¶¶ 17.)

Defendant subsequently reported to work on September 2, 2012, at approximately 6:00 p.m. (Cunha Decl. ¶ 16.) Defendant contends that during this shift, this time working as a floor officer, he conducted the head count checks of Plaintiff's cell at 10:20 p.m., and conducted a security check of Plaintiff's cell at midnight with Correctional Officer Trainee Rodrigo Alvarado. (Id. at ¶ 17.) Defendant declares that during those checks, Plaintiff did not complain to Defendant of any pain or voice a need to be seen by medical staff. (Id.) Defendant also contends that on September 3, 2012, he worked the floor and conducted security checks of Plaintiff's cell at 1:49 a.m., 2:15 a.m., and again with Officer Alvarado at 4:10 a.m. (Cunha Decl. ¶ 17.) Defendant declares that Plaintiff also did not voice any need to be seen by medical personnel during any of those security checks. (Id.)

On the other hand, Plaintiff contends that Defendant never checked on his condition or investigated his well-being. (Pl.'s Aff. at p. 3 ¶ 11, p. 5 ¶ 25.) Plaintiff also contends that the lack of assistance offered to him seemed intentional, as Defendant took no effort to examine him, contact medical, or radio for any staff to investigate his condition. (Id. at pp. 3-5, ¶¶ 12-13, 17-18, 23-30.) Plaintiff felt stressed and afraid to keep asking for help, and felt that seeking further help from the officers was futile, since his repeated requests for help had been ignored. (Id.) According to Plaintiff, sometime while he was waiting in the jail for medical care, he was offered a bandage from another

7

inmate for his open wound. (Pl.'s Aff. at p. 4 ¶ 14.) Plaintiff also contends that the wound was "gaping," that the resulting pain kept him from sleeping, and the lack of treatment caused duress and both physical and mental anguish. (First Am. Compl. at pp. 5-6 ¶ 23; Pl.'s Aff. at p. 3-6 ¶¶ 13, 17, 24, 29, 31-33.)

The parties agree that on September 3, 2012, Plaintiff was seen by medical staff at the jail infirmary. (Haros Decl., ECF No. 48-3, at ¶ 8; Sept. 3, 2012 Progress Note, ECF No. 48-5, at p. 9; Pl.'s Aff. at p. 4 ¶ 20, p. 5 ¶ 24.) An officer with relevant knowledge declares that computer logs show Plaintiff went to the infirmary at 1:01 p.m. (Haros Decl. ¶ 8.) According to the medical staff's progress notes, Plaintiff's wound was cleaned, and Plaintiff indicated that it did not need to be dressed, but merely needed a bandage applied. (Sept. 3, 2012 Progress Note.) Plaintiff contends that the wound was cleaned and dressed. (Pl.'s Aff. at p. 4 ¶ 20.)

The parties also agree that Plaintiff was again seen by medical staff at the jail on September 4, 2012. (Pl.'s Aff. at p. 5 ¶ 24.) Medical progress notes from that date state that the wound was again cleaned, and ointment was applied. (Sept. 4, 2012 Progress Note, ECF No. 48-5, at p. 8.) Plaintiff contends that he received medical care because he had been complaining about the bullet wound and the pain, including in a call to his criminal defense lawyer. (Pl.'s Aff. at p. 5 ¶ 24; First Am. Compl. at p. 5 ¶ 19.) Plaintiff further contends that he finally received medical care after being visited by his lawyer's associate, an investigator. According to Plaintiff, the investigator viewed Plaintiff's wound after Plaintiff spoke with his lawyer about the lack of medical attention. The investigator later visited Plaintiff again accompanied by federal agents, who requested that the jail staff take Plaintiff to the jail infirmary to get medical care. (First Am. Compl. at pp. 5-7, ¶¶ 19- 34.)

**C.  Analysis**

Defendant argues that the undisputed facts establish that his actions did not rise to the level of deliberate indifference to Plaintiff's serious medical needs, and therefore he is entitled to summary judgment as a matter of law in this case. Defendant's argument is based on an Eighth Amendment deliberate indifference standard. (ECF No. 48-1, pp. 5-6.)

Plaintiff did not specifically allege whether he was a pretrial detainee or serving a sentence of confinement in his First Amended Complaint, and the evidence submitted by the parties in relation to

8

this motion for summary judgment does not clarify this issue. Plaintiff did make some references to conferring with his criminal defense attorney at this time in his First Amended Complaint. The Court therefore continues to presume, as it did earlier in this case, that Plaintiff was a pretrial detainee at the time of the events as issue.

In the case of a pretrial detainee's claim for deliberate indifference to a serious medical need, the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, governs. See Castro v. County of Los Angeles, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)) (inmates, if not yet convicted, who sue prison officials for injuries suffered while in custody, may do so under the Fourteenth Amendment's Due Process Clause); Redman v. County of San Diego, 942 F.2d 1435, 1442-43 (9th Cir. 1991) (applying deliberate indifference standard to pretrial detainees through the Due Process Clause of the Fourteenth Amendment). At present, the standard applicable to a pretrial detainee's claim for inadequate medical care under the Fourteenth Amendment is not clear. In the past, such claims were subject to the same state of mind requirement as an Eighth Amendment violation—subjective and deliberate indifference to a substantial risk of serious harm. See Clouthier v. County of Contra Costa, 591 F.3d 1232 (9th Cir. 2010).

That holding was called into question by the United States Supreme Court in a Fourteenth Amendment excessive force case, Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). In Kingsley, the United States Supreme Court considered whether, to prove an excessive force claim, a pretrial detainee must show that the officers were subjectively aware that their use of force was unreasonable, or only that the officers' use of force was objectively unreasonable. Id. at 2470. The Supreme Court concluded that the relevant standard is objective, not subjective. Id. at 2472-73.

Recently, the Ninth Circuit has extended Kingsley's rationale to pretrial detainees' failure-to-protect claims, setting forth a "less stringent" standard that eliminates any "subjective intent to punish." Castro, 833 F.3d at 1067-68, 1071 & n.4. Castro characterized this test as requiring "more than negligence but less than subjective intent—something akin to reckless disregard." Id. at 1071 & n.4. Castro did not address whether the new Kingsley test applies beyond failure-to-protect claims to all pretrial detainee conditions of confinement claims.

In Guerra v. Sweeny, No. 1:13-cv-01077-AWI-BAM (PC), 2016 WL 5404407 (E.D. Cal Sept. 27, 2016) (Ishii, J.), the court extended Castro to an untreated medical needs case. The Guerra court determined that the elements of such a claim are:

(1) The plaintiff made a request for medical care or the need for care was glaringly obvious;

(2) The plaintiff had a serious medical need;

(3) The defendant did not take reasonable steps to obtain or provide medical care, even though a reasonable officer (or reasonable medical staff) in the circumstances would have appreciated the high degree of risk involved—making the likelihood of harm obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

Id. at *3. See also Peralta v. Fresno Cty. Police Officers, No. 1:16-cv-01921-LJO-SAB, 2017 WL 2958702, at *3 (E.D. Cal. July 11, 2017) (same); Williams v. Cty., No. 2:15-CV-01760-SU, 2016 WL 4745179, at *5 (D. Or. Sept. 12, 2016) (extending Castro test to claim for failure to protect from self-harm or attempted suicide).

With these standards in mind, the Court turns to Defendant's specific arguments.

### 1. Serious Medical Need

Defendant first argues that Plaintiff cannot show that he had a serious medical need. Defendant argues that the undisputed evidence shows that Plaintiff had a bullet in his stomach for a considerable amount of time that had worked itself out of his body, at which time he complained about it. Defendant asserts that there is a lack of evidence that Plaintiff's medical condition significantly affected his daily activities, and that the undisputed evidence shows that Plaintiff did not inform any floor officers of his condition, and that Plaintiff ceased raising the issue with Defendant when Defendant was conducting security checks on September 2, 2012 and the early morning hours of September 3, 2012. Further, Defendant argues that the undisputed evidence shows that when Plaintiff received medical care on September 3, 2012, he was only in need of a bandage for his wound, and not any dressing.

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d

1050, 1059 (9th Cir. 1991) (quoting Estelle v. Gambel, 429 U.S. 97, 104 (1976)). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." Id. at 1059-60 (citations omitted).[5]

In this case, the Court finds that Plaintiff has presented sufficient evidence to raise a question of material fact as to whether he had a serious medical need, and whether he made a request for medical care or the need for care was glaringly obvious. Plaintiff has submitted a sworn affidavit and verified complaint stating that on September 1, 2012, a bullet which had been previously lodged in his body had exited his stomach. That Plaintiff had been living with the bullet in his body for some time prior to that date is relevant evidence of Plaintiff's condition, and might tend to show the lack of a serious medical need at least while the bullet was in Plaintiff's body. Nevertheless, Plaintiff has presented evidence from which a reasonable finder of fact could determine that the condition had, at a minimum, become a significant, serious injury when the bullet exited his body. Plaintiff has testified that the exit wound was open, gaping and bleeding, and caused him severe pain, duress, and physical and mental anguish. This evidence, if credited by a finder of fact, reasonably tends to show an injury that a doctor or patient would find necessary to treat, and therefore presented a serious medical need. Plaintiff also provided additional testimony that the open wound was keeping him from sleeping, and that the lack of treatment of the wound for some days caused Plaintiff depression and additional pain, which shows a significant effect of the condition on his daily activities. The credibility of Plaintiff's testimony regarding these issues is a matter for the trier of fact to determine.

Defendant also stresses that the lack of evidence showing Plaintiff continually requested medical care from him or the other jail staff tends to disprove that Plaintiff had any serious medical

---

[5] This objective, second element of a Fourteenth Amendment claim for untreated medical needs is the same as the first element of a claim for deliberate indifference to serious medical needs under the Eighth Amendment standard that Defendant argues applies here. See Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citing Estelle, 429 U.S. at 104) (first of two elements of an Eighth Amendment claim for deliberate indifference is an objectively serious medical need). Therefore, if Plaintiff satisfies this element of the claim under the Fourteenth Amendment standard, he will also satisfy the same element of the claim under the Eighth Amendment standard.

1 need. On the other hand, Plaintiff has presented agreed evidence that he twice requested for Defendant to get him medical attention while Defendant was in the security station, as well as disputed evidence that he showed or attempted to show or tell Defendant that he was bleeding, but was ignored. Plaintiff has also offered an explanation for the lack of evidence showing that he continued to request medical care from the jail staff, including that there was no other staff available or he did not see such staff, that he thought his complaints were purposely being ignored, and that he believed continued requests for assistance would be fruitless. Plaintiff has also presented evidence that he instead turned to his criminal defense attorney for help. Plaintiff's testimony, when viewed in the light most favorable to him, is a plausible explanation that shows why he ceased requesting assistance from Defendant and did not request assistance from other jail staff even though he was allegedly suffering from a serious injury. At trial, the trier of fact may not credit Plaintiff's explanation or testimony, but the credibility of the parties' conflicting explanations cannot be determined by the Court on summary judgment. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1115 (9th Cir. 2004) ("[W]hen ruling on a summary judgment motion, the district court is not empowered to make credibility determinations or weigh conflicting evidence.") (citations omitted).

Based on the foregoing, Plaintiff has sufficiently raised a material issue of fact as to whether he had a serious medical need caused by the bullet exiting his body on September 1, 2014, and as to whether he requested care or the need for care was glaringly obvious. Thus, Plaintiff has presented sufficient evidence to meet the first two elements of his deliberate indifference claim as set forth in Guerra, discussed above.

### 2. Deliberate Indifference

Defendant next argues that, even assuming that Plaintiff had a serious medical need, Plaintiff still cannot show that Defendant was deliberately indifferent to his condition. Defendant asserts that he reasonably responded to Plaintiff's complaints by directing him to the floor officers for assistance. Defendant also argues that Plaintiff has presented no evidence that Defendant was aware of and inferred that there was a risk of harm to Plaintiff if he went untreated. Finally, Defendant argues that at best Plaintiff may have shown that Defendant's behavior while he was in the security station was an "isolated exception" that is not sufficient to show deliberate indifference, as Defendant conducted

many subsequent security checks as a floor officer that were all "without incident." (ECF No. 56, at p. 2.) Defendant argues that what Plaintiff has shown constitutes nothing more than negligence, which is not actionable under section 1983.

Under Kingsley's objective test for a Fourteenth Amendment deliberate indifference claim, a plaintiff "must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Cheung v. Sequeira, No. CV 17-00257 DKW-KSC, 2017 WL 3431586, at *4 (D. Haw. Aug. 8, 2017) (quoting Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017)) A plaintiff must also show that by not taking any reasonable steps to obtain or provide medical care, the defendant caused the plaintiff's injuries. Guerra, 2016 WL 5404407 at *3.

Under the Eighth Amendment deliberate indifference standard that Defendant argues applies, "[a] prison official is deliberately indifferent under the subjective element of the test only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" Colwell, 763 F.3d at 1066 (quoting Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (internal quotation mark omitted). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment . . . .'" Id. (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

Whether alleged under the Fourteenth Amendment or the Eighth Amendment, mere negligence will not suffice to support a claim of deliberate indifference to a serious medical need. Plaintiff must show that Defendant had "a state of mind more blameworthy than negligence" and deliberate indifference "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer v. Brennan, 511 U.S. 825, 835 (1994) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

In this case, the Court finds that Plaintiff has presented sufficient evidence to create a genuine issue of material fact regarding whether Defendant was deliberately indifferent to his alleged serious medical need, regardless of whether the Fourteenth Amendment or the Eighth Amendment standard applies. Plaintiff presented evidence that he repeatedly informed Defendant of his open wound and

need for care, as well as either showed or attempted to show Defendant that he was bleeding, but he was repeatedly ignored by Defendant. Although Defendant argues that he did not ignore Plaintiff and directed Plaintiff to readily-available and present floor staff, Plaintiff refutes each of these assertions by his own testimony that none of these facts are true. Thus, Plaintiff has created a genuine dispute over whether Defendant was aware of Plaintiff's condition but knowingly disregarded it, and whether Defendant recklessly failed to act with reasonable care to Plaintiff's injury, despite the fact that he either knew or should have known that Plaintiff's open, bleeding, painful wound posed an excessive risk of harm to him. Plaintiff has also presented evidence, referenced above, that he suffered extreme pain and a lack of sleep from the delay in treatment, which is evidence of an injury caused by Defendant's alleged indifference to Plaintiff's condition. Plaintiff also disputes Defendant's assertions that he, at times accompanied by another officer, checked on Plaintiff's condition, by providing testimony that Defendant did not check on him or examine him, and instead ignored him.

Defendant also repeatedly asserts that Plaintiff has not disputed Defendant's evidence here. Plaintiff's testimony based on personal knowledge of the events at issue, including the interactions between him and Defendant or between Plaintiff and other jail staff, which is contrary to Defendant's assertions, is sufficient to create disputed issues of fact. "In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that 'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" Epps v. CSP Sacramento, No. 2:14-cv-1347-MCE-AC-P, 2017 WL 117898, at *7 (E.D. Cal. Jan. 10, 2017) (quoting T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)).Although Defendant has some corroborating evidence in the form of testimony from other witnesses and documents, whereas Plaintiff has only presented his testimony at this time, this factor would go to the credibility and weight of the evidence, not whether the facts are in dispute.

At summary judgment, the court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). Here, giving Plaintiff the benefit of the undisputed facts and finding the disputed facts in his favor, Plaintiff has shown present

evidence of a gaping, bleeding wound requiring care, that he showed or attempted to show to Defendant, and that he repeatedly asked Defendant to procure him medical assistance. Nevertheless, Defendant allegedly ignored Plaintiff's requests for medical care and bleeding, open wound, causing Plaintiff to suffer extreme pain, anguish, and a lack of sleep from the delay in treatment. Under either an Eighth Amendment or a Fourteenth Amendment standard, a reasonable jury could find in Plaintiff's favor on a claim of deliberate indifference based upon these facts.

Accordingly, the Court finds that Plaintiff has presented a triable issue of fact as to whether Defendant was deliberately indifferent to his serious medical need, and summary judgment cannot be granted in Defendant's favor on Plaintiff's claim.

## IV. Conclusion and Recommendation

For these reasons, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment filed on January 6, 2017 (ECF No. 48), be DENIED.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 28, 2017**         /s/ *Barbara A. McAuliffe*
                                UNITED STATES MAGISTRATE JUDGE